IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| XINYI LI, XIAOMEI LI, HONGXIN DING, WEI ZHANG, HUI XU, YI WANG, ZHENGYANG WANG, XIAOCHEN JIANG, YUSEN CAO, XUEMENG WU, NANA WANG, RUI BAO, JINGJIAN LIANG, FANG LIU, YUYANG SUN, ZIYUAN ZHAO, ZHEN QIN, YANG XIAO, YUJIA XIANG, FANG RAO, YANLING ZHU, ZHEYU LIU, LI JIN, and KECHENG CHAI, Plaintiffs, v. COCONUT BEACH/HAWAII LLC, FOREFRNT EB-5 FUND (HCR) LLC, JEFFREY L. LAYTIN, and JASON DING a/k/a WEI DING a/k/a JASON WEI DING a/k/a CHENGLIN DING a/k/a CHENG LIN DING. Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. Action No. |

## COMPLAINT

Plaintiffs each invested $550,000 to purchase a membership unit in Coconut Beach/Hawaii LLC ("CBH"). The owners of CBH also owned an affiliated entity named SPD II Makaiwa Resort Development LLC ("SPD") which had plans to develop a hotel on the island of Kauai, Hawaii. The purpose of CBH was to raise money from overseas investors through the Executive Branch's EB-5 Visa Program, and then loan this money to SPD.

CBH had its agent in China provide Plaintiffs with an offering memorandum for sale of the units. The Plaintiffs signed investment documents and wired money to CBH via its escrow agent TD Bank NA, which sent confirmations that the money had been received, mostly in 2016 and 2017. The supposed loan from CBH to SPD had a 5-year maturity date, and during that time the Defendants created an impression that the project was moving forward. For example, in Spring 2022, they represented in writing that SPD owned the land, and that construction had started in 2018, and that the project obtained full financing in 2021. Additionally, Defendants circulated documents purporting to show a $196 million dollar balance in a Middle East bank, and a $235 million dollar loan from a domestic lender, suggesting that the project was secure and was in the total range of many hundreds of millions of dollars.

In reality, SPD lost all rights to the property due to judicial foreclosure in 2019, and was pushed into involuntary bankruptcy in 2022. An inspection of CBH's books and records failed to locate any documents showing that the Plaintiffs were ever given membership units in CBH, nor that money was ever loaned from CBH to SPD, nor that SPD owned the property in Hawaii. In fact, CBH's records showed that it (like SPD) only had two 50% members - Defendant Jeffrey Laytin and Defendant Chenglin Ding, believed to be an alias for Jason Ding. Their financial records and tax returns showed $0 in assets for the last 3 years. There was no record of where the Plaintiffs' money went. The total number of foreign investors is believed to be 43 based on credible evidence, but of this number the 24 investors lost an aggregate of $13,200,000 without accounting for interest, fees, and costs.

## Parties

1. Plaintiffs are residents of The People's Republic of China.

2. No Plaintiff is a resident of New York or Illinois.

3. Defendant Coconut Beach/Hawaii LLC ("CBH") is an active New York unincorporated entity purportedly with two members residing in New York and Illinois respectively.

4. Defendant Forefront EB-5 Fund (HCR) LLC ("Forefront") is an active New York unincorporated entity purportedly with two members residing in New York and Illinois respectively.

5. Defendant Jeffrey L. Laytin is a resident of New York State.

6. Defendant Jason Ding (a/k/a Jason Wei Ding a/k/a Wei Ding a/k/a Chenglin Ding a/k/a Cheng Lin Ding) is a resident of the State of Illinois.

7. At all relevant times, each of the Defendants was acting as the alter ego and agent of the other Defendants including other persons and entities, each acting with authority, permission, and consent of the other Defendants.

## Jurisdiction and Venue

8. Jurisdiction lies in federal court pursuant to 28 U.S.C. 1332(a)(2) because this is a civil matter in excess of the statutory minimum between subjects of a foreign state and residents of New York and Illinois, as well as against unincorporated entities whose owners are residents of New York and Illinois.

3

9. Venue is proper in this district pursuant to 28 U.S.C. 1391(b) because defendant Jason Ding is an Illinois resident in the City of Chicago and is subject to the personal jurisdiction of this Court.

**Factual Allegations Common to All Counts**

10. Plaintiffs were living in mainland China when they were made aware of the CBH investment opportunity by Chinese placement agent Cansine Ltd. (pronounced "Kaishung").

11. The Defendants furnished Cansine with a "Confidential Offering Memorandum" dated December 2015 (the "PPM") to provide to potential investors in China.

12. The PPM described the investment opportunity to purchase LLC units in CBH and attached the documents that an investor needed to sign to purchase a unit, including a Subscription Agreement, an LLC Operating Agreement, and a wire transfer into an escrow account at TD Bank NA.

13. A copy of the PPM is attached as Exhibit 1 to this Complaint.

14. The PPM represented that, "Coconut Beach/Hawaii LLC (the "Company") has been organized to provide financing (the "Loan") to SPD II Makaiwa Resort Development LLC, a New York limited liability company (the "Project Owner") for the development (construction and operation) of a resort . . on the eastern shore of the Island of Kauai" Exhibit 1 at p. 1.

15. The PPM represented that the "Loan" from the Company [CBH] to the Project Owner [SPD] would have a "Maturity Date" of 5 years subject to two 1-year extensions. Exhibit 1 at p. 23.

16. The PPM represented that, "the Loan will be secured by a second priority lien on all assets of the Project Owner [SPD]." Exhibit 1 at p. 24.

17. In reliance on the PPM, each Investor signed an LLC Operating Agreement which was countersigned by Laytin for CBH (hereafter, the "First LLC Agreement"). A countersigned copy of the First LLC Agreement is attached as Exhibit 2 to this Complaint.

18. The First LLC Agreement stated that, "The Company has been formed for the purposes of making a loan to the Project Owner (the "Loan") in connection with the development of the Project by the Developer." It defined "Company" as "Coconut Beach/Hawaii LLC"; defined "Project Owner" as "SPD II Makaiwa Resort [Development] LLC"; defined "Project" as "development (construction and operation) of a resort . . on the Island of Kauai"; and defined "Developer" as "Forefront." See Exhibit 2 at §§1.16, 1.17, 1.43, 1.45, and 4.1.

19. In reliance on the PPM, each Investor signed a Subscription Agreement which was countersigned by Laytin for Defendant CBH. A countersigned Subscription Agreement is attached as Exhibit 3 to this Complaint.

20. Pursuant to the Subscription Agreement, each Plaintiff wired $550,000 to TD Bank NA.

21. After wiring the $550,000, each Plaintiff received a confirmation letter from TD Bank NA saying that it had received the $550,000, and that $500,000 was allocated to a Subscription Escrow and $50,000 to a Subscription *Expense* Escrow. This confirmation was signed by a Vice President of TD Wealth Management. See Exhibit 4 for copies of such confirmation letters.

22. Pursuant to an Escrow Agreement between TD Bank NA and CBH dated November 2015, TD Bank NA agreed to hold a subscriber's money in escrow until CBH gave written direction that the Executive Branch's USCIS had approved the subscriber's Form I-526 Petition (the first step in the EB-5 visa program toward qualifying for a green card by investment).

23. Upon information and belief, all of Plaintiffs' I-526 Petitions were approved by the USCIS in 2016 and 2017, so their money was released from escrow by TD Bank NA throughout 2016-2018 depending on their date of investment.

24. Upon information and belief, this enabled CBH to make the Loan to SPD and take a second lien against SPD's assets on an ongoing basis.

25. During the years when the Loan was supposedly maturing, CBH and SPD created the impression that the Plaintiffs' money had been loaned and put to work: they circulated a document to the Plaintiffs' immigration counsel showing that over $21 million dollars had been put into the project for development and construction; they purported to have a contract with Hard Rock Hotel for hotel management; they purported to have $196 million from Al Hilal bank in the Middle East; they purported to have a $235 million loan from RealEquity Corp in Wyoming;

6

they supposedly solicited bids for a subcontractor; and they claimed to be the "owner" of the land through 2022 even though (as described below) they lost ownership in 2019 when the land went into foreclosure.

26. Plaintiffs received an unsigned email letter dated April 1, 2022, from Forefront assuring them that SPD owned the land, that the construction financing had been obtained in 2021, that the construction funds were in escrow, and that Forefront would arrange for any investors who wanted their money back to opt-out of the transaction and receive a refund once the construction loan closed. This letter is attached as Exhibit 5 to this Complaint.

27. The Plaintiffs came into contact with attorney Litowitz because he was co-counsel representing a certified class of Chinese investors who had lost all their money in a never-built apartment complex in Chicago, where the transaction was structured nearly identically and involved Defendants Jeffrey Laytin and Jason Ding. *Duo v. Carillon Tower/Chicago LLC, Symmetry Property Development, Jeffrey Laytin, et al.,* Case No. 18-cv-07865. Litowitz and co-counsel had secured a judgment against these Defendants, so they had been keeping an eye on the Hawaii project in the hope that it might generate income to pay the Chicago judgment. At that time, Litowitz had no idea how many persons had invested in CBH - if any - but he was aware that Laytin and Ding were supposedly attempting to obtain financing based on the Hawaii project in an amount sufficient to pay the Chicago judgment and other creditors.

28. Toward the end of Summer 2022, Plaintiffs began reaching out to attorney Litowitz on Chinese Apps for further information on the Hawaii transaction.

29. As instructed, attorney Litowitz conducted research through the Hawaii court databases and found that SPD's land was put into foreclosure by creditors in 2019 and that under Hawaii law this foreclosure passed title to a "Commissioner" and did not allow a right of reversion to the previous titleholder (as for example, in Illinois). This meant that the land would be sold to the highest bidder who would take the title and leave no equity for SPD; in fact, the land was not sufficient to pay the secured creditors in Hawaii, and there were additional unsecured creditors in Hawaii whose fate was undetermined. See *Corban Kauai Chicago Lender LLC v. SPD II Makaiwa Resort Company LLC et al,*, Case No. 5CC191000034 (Fifth Circuit, State of Hawaii). Eventually this land was sold by judicial sale on November 30, 2021, meaning that no Defendant currently has any interest in the Hawaii property.

30. Attorney Litowitz further discovered that SPD had been forced into involuntary bankruptcy at 22-bk-00355 (D. Hawaii 2022), but had emerged with permission of the bankruptcy court to sell the land through the state case and to pay creditors as best it could via the state court proceeding (essentially remanding to state court). Attorney Litowitz also discovered that the foreign registrations of CBH and SPD to do business in Hawaii were involuntarily revoked on June 7, 2019, which further suggests that they were aware that they had no assets in Hawaii to manage as of 2019.

31. Most troubling, the Hawaii cases made no mention of any Loan from CBH to SPD, nor was CBH listed as a creditor/lender to SPD, suggesting that either

8

the Loan had existed or that information about it was intentionally withheld from state and federal courts in Hawaii.

32. Attorney Litowitz then demanded a books and records inspection of CBH under New York LLC law §1102 by letter dated November 3, 2022, a copy of which is attached as <u>Exhibit 6</u> to this Complaint.

33. The inspection took place in Chicago on December 5, 2022, and was attended by attorney Litowitz and a paralegal for a law firm representing Defendants.

34. The following description of documents produced at the inspection is affirmed in the sworn affidavit of Douglas Litowitz attached as <u>Exhibit 7</u> to this Complaint.

35. At the inspection, CBH failed to produce any records showing that they ever had any Chinese members; they failed to produce any receipts showing money received from the offering of LLC units; they failed to show any signed and dated loan agreement with SPD; they failed to show any lien against SPD's assets or collateral from SPD to secure the loan; and their tax returns showed $0 in assets going back to 2018.

36. At the inspection, CBH produced an LLC operating agreement dated 2020 (the "Second LLC Agreement") that was different from the First LLC Agreement; this version showed Jeffrey Laytin as "Manager" (instead of Forefront) and only two 50% members: Jeffrey Laytin and Chenglin Ding (believed to be an alias for Jason Ding).

9

37. At the inspection, CBH produced tax returns showing $0 in assets and annual expenses under $200, and the tax returns did not have K-1 partnership returns for the Plaintiffs, only for the two members Laytin and Ding; and the tax returns listed Chenglin Ding as living in Tianjin, China, but the address was obviously fake to anyone who had lived in China (it was a person's name and not a location).

38. After the inspection, attorney Litowitz wrote a letter to CBH dated December 6, 2022 stating that they failed to comply with New York LLC law §1102 by failing to provide financial records sufficient to determine the path of the Plaintiffs' money through CBH. A copy of this letter is attached as Exhibit 8.

39. Searches of various public information websites showed that Jason Ding had aliases of Chenglin Ding, Cheng Lin Ding, Jason Wei Ding, Wei Ding, and other names, all at the same address on Fairfield Avenue in Chicago. See Exhibit 9. This raises doubts as to whether Chenglin Ding (the supposed 50% owner of CBH and SPD) is a real person or an alias.

40. Jeffrey Laytin is a real person since he appeared in this Court, and Jason Ding is also a real person since he too has appeared in this Court, but neither attorney Litowitz nor any of his connections dealing with Laytin or Ding in New York or Hawaii has ever met "Chenglin Ding."

41. The Plaintiffs have not been repaid their investment, and they have reason to believe that their money was diverted and dissipated.

42. The Defendants fraudulently concealed their wrongdoing (breach of contract, breach of fiduciary duty, conversion) by providing the Plaintiffs with misinformation about the supposed progress of the project and the ongoing viability of the Plaintiffs' investment, all while the Defendants had a special fiduciary relationship with the Plaintiffs that required them to reveal all material facts. This fraudulent concealment related to material matters that were not discoverable by foreign persons (such as alleged financing arrangements, bank balances, construction contracts, disputes on the island of Kauai), and were made by the Defendants with the intent to deceive the Plaintiffs into believing that the project was viable.

## COUNT I
**(against all Defendants)**
**Breach of Contract – Breach of First LLC Agreement**

43. Plaintiffs re-allege and reincorporate, as though fully set forth herein, each and every allegation above.

44. The First LLC Agreement is a contract between Forefront as "Manager" and each Plaintiff as an "Investing Member," and it is signed by defendant Jeffrey Laytin for defendant Forefront. See Exhibit 3.

45. Plaintiffs have complied with all requirements under the First LLC Agreement.

46. Defendants breached §4.1 by failing to use the Plaintiffs' Capital Contributions to make a loan to SPD.

11

47. Defendants breached §8.3(2) by dissipating and diverting the Plaintiffs' Capital Contributions and thereby making it impossible for CBH to carry out its stated business purpose.

48. Defendants breached §9.1 by taking fees in excess of 1% per annum by diverting the Plaintiffs' Capital Contributions to their own purposes.

49. Defendants breached §11.1(4) by not dissolving CBH upon the disposition of all or substantially all of its property.

50. Defendants breached §14.1 and §14.2 by not keeping accurate books and records and by not delivering financial reports to Investing Members.

51. Defendants breached §15 by surreptitiously amending or substituting the First LLC Agreement with the Second LLC Agreement in violation of the requirement that any Amendment requires a majority vote of Investing Members.

52. Defendants breached the duty of good faith and fair dealing inherent in every contract by diverting the member's Capital Contributions, by failing to fulfill the essential purpose of the company, and by failure to provide reports to members.

53. Plaintiffs have been injured as a consequence of Defendants' breaches of the First LLC Agreement.

54. As a consequence of Defendants' breaches described above, each Plaintiff has suffered a financial loss of $550,000 not accounting for the time value of money.

WHEREFORE, each Plaintiff demands $550,000 (an aggregate of $13,200,000 for 24 Plaintiffs) and statutory interest, costs, and attorney fees.

### Count II
### (against all Defendants)
### Breach of Fiduciary Duties

55. Plaintiffs re-allege and reincorporate, as though fully set forth herein, each and every allegation above.

56. CHP is subject to the New York Limited Liability Company Act, per §1.30 of the First LLC Agreement (hereafter, the "NYLLC").

57. NYLLC §409(a) provides that a manager shall perform his or her duties as a manager "in good faith and with that degree of care that an ordinarily prudent person in like position would use under similar circumstances."

58. NYCCLC §411(2) voids "interested transactions" between an LLC and its manager unless full disclosure was made to members.

59. LLC managers have fiduciary duties of care and loyalty to the LLC and its members that are violated by looting, waste, and self-dealing. *LMEG Wireless, LLC v. Farro,* 190 A.D. 716 (N.Y. 2021).

60. Forefront and the other Defendants acting as managers of CBH violated their fiduciary duties of care and loyalty to CBH and to the Plaintiffs by dissipating and diverting the Capital Contributions of the Plaintiffs for their own purposes.

61. The Defendants' breach of fiduciary duties violated the New York Limited Liability Act and common law, causing damages to the Plaintiffs.

13

WHEREFORE, each Plaintiffs demands $550,000 (an aggregate of $13,200,000 for 24 Plaintiffs) plus statutory interest, costs, and attorney fees.

### Count III
**(against all Defendants)**
**Conversion**

62. Plaintiffs re-allege and reincorporate, as though fully set forth herein, each and every allegation above.

63. CBH received $550,000 from each Plaintiff.

64. CBH was obligated by the PPM and the First LLC Agreement to use the Plaintiffs' investments to make the Loan.

65. CBH knew that the Plaintiffs invested on condition that the money would be used for a loan to SPD to develop a resort, and that Plaintiffs did not consent to transfer of their investment funds to the manager or third parties.

66. The Defendants took Plaintiffs' investment money and converted it to their own possession and that of affiliated parties in violating of the conditions under which it was supposed to be held by CBH for a Loan to SPD, and this was done without the knowledge or consent of the Plaintiffs.

67. This conversion was intentional, purposeful, and done with knowledge that it violated the letter and spirit of the contracts under which the Plaintiffs invested.

68. This misconduct is conversion regardless of whether the Plaintiffs were ever granted units in CBH; indeed, if no units were issued then it was a pure act of theft for nothing in return.

69. As a result of this wrongful conversion, the Plaintiffs have suffered damages.

WHEREFORE, each Plaintiff demands $550,000 (an aggregate of $13,200,000 for 24 Plaintiffs) plus statutory interest, costs, and attorney fees.

## Count IV
**(against all Defendants)**
**Accounting**

70. Plaintiffs re-allege and reincorporate, as though fully set forth herein, Each and every allegation above.

71. An accounting is an equitable remedy for a breach of fiduciary duty, if the plaintiff can show credible evidence of potential wrongdoing by a company's managers.

72. The letter from attorney Litowitz to CBH dated December 6, 2022, demanded that CBH produce "financial information showing any flow of funds through CBH, including without limitation funds flowing through TD Bank NA via Coconut Beach/Hawaii Escrow and Expense Accounts 60157930." See Exhibit 8.

73. This is a demand for an accounting based on justified suspicion that Defendants engaged in wrongful conversion of the Plaintiffs' funds and breach of contract and breach of fiduciary duty.

74. Plaintiffs (as is their right) have demanded – but never received – any banking records of CBH and SPD showing the flow of their money through TD Bank NA and through other banks so that it can be traced.

> WHEREFORE, the Plaintiffs demand a full and complete accounting of financial transactions of CBH showing the flow of the Plaintiffs' investment through that entity and any other entities or persons, not limited to banking records at TD Bank NA or other banks of affiliated entities.

## Count V
### (for CBH against other Defendants)
### *Derivative Claim*
### Breach of Contract, Conversion, Breach of Fiduciary Duties

75. Plaintiffs re-allege and reincorporate, as though fully set forth herein, each and every allegation above.

76. At all relevant times hereto, all Plaintiffs were members of CBH.

77. The Defendants caused harm to CBH by converting, diverting, and dissipating its assets, looting the company, and using the funds for their own benefit.

78. CBH has an obligation to bring suit to recover this money for itself.

79. A derivative demand by Plaintiffs is futile and excused because it would be tantamount to asking Defendants to bring suit for CBH to recover the money that they themselves converted, looted, and wasted in self-dealing transactions.

80. Plaintiffs, on behalf of CBH, assert that the Defendants have misappropriated its funds, diverted them for their own benefit, not used them as intended, failed to report such wrongdoing to Plaintiffs, and caused economic harm

16

to CBH as an entity by looting and stripping all of its assets or by 'borrowing' CBH's money surreptitiously without returning it.

81. Plaintiffs derivatively assert the right of CBH to recover the damage caused by Defendants.

82. Plaintiffs, for CBH, demand the return of all funds misappropriated by the Defendants in the form of expenditures not related to the subject matter of the investment which was the development and operation of a hotel in Hawaii.

83. This is a derivative claim so recovery is sought in the name of CBH.

84. Upon information and belief, based on diligent research and information obtained from former agents and contractors of the Defendants, there were a total of forty-three (43) investors including the twenty-three named Plaintiffs, who invested an aggregate of $23,650,000 into CBH, meaning that if CBH's assets are now $0 (according to their financial records) this is the amount taken from all investing members.

> WHEREFORE, Plaintiffs derivatively demand that Defendants collect from the other Defendants damages aggregating $23,650,000 plus statutory interest, costs, and attorney fees.

Dated:   December 15, 2022            Respectfully Submitted,

/s/ Douglas Litowitz
Douglas Litowitz
Attorney at Law
413 Locust Place
Deerfield, IL 60015
(312) 622-2848
Litowitz@gmail.com